UNITED STATES DISTRICT COURT
California 9th Circuit Northern District
of California.

RECEIVED
NOV 2 0 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Kevin B Prasad
Plaintiff

v

Sheriff Carlos G Bolanos
UnderSheriff Mark C Robbins
Assistant Sheriff John W Munsey
Captain Kristina Bell
Lieutenant John Kovach

Complaint
Civil Action No. ___

## I Jurisdiction & Venue

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure

1

2. The California 9th Circuit Northern District of California is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II Plaintiff

3. Plaintiff, Kevin B Pinsad, is and was at all times mentioned herein a prisoner of the State of California in the custody of the County of San Mateo. He is currently confined in Maple Street Correctional Center, in Redwood City California.

## III Defendants

4. Defendant, Carlos G Bolanos, is the Sheriff of the County of San Mateo. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Maple Street Correctional Center.

5. Defendant, Mark C Robbins, is the Under Sheriff of the County of San Mateo. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Maple Street Correctional Center.

6. Defendant, John W Munsey, is the Assistant Sheriff of the County of San Mateo. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Maple Street Correctional Center

7. Defendant, Kristina Bell, is the Captain and Warden of Maple Street Correctional Center. She is legally responsible for the operation of Maple Street Correctional Center, and for the welfare of all the inmates in that jail.

8. Defendant, John Kovach, is an Administrative Lieutenant of the County of San Mateo who, at all times mentioned in this complaint, held the rank of Lieutenant and was assigned to Maple Street Correctional Center.

9. Each Defendant is sued individually and in their official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

## IV Facts

10. On March of 2020, Governor Gavin Newsom ordered a statewide Shelter in place order in response to the Sars-Covid 19, herein referred to as the Coronavirus, Pandemic. At the time, San Mateo County was using the Renovo Video Visiting Software for all non-legal visits. As a result, Jail officials ceased all non-legal visits and closed their lobby. Inmates were no longer allowed to receive visits from family and friends until the pandemic ceased.

11. In Mid-June, 3 months into the Shelter in place and the pandemic, inmates at San Mateo Counties other jail, Maguire Correctional Facility, went on a 10 day hunger strike to demand jail officials for a resumption of visits. As a result, in Early July, Jail staff changed the Video Visiting software from Renovo to Smart Jail Mail.

12. Upon finding out that visits had indeed resumed and that inmate visitors could now visit from the safety of their home, I had my family set up a visit. On 27 July 2020 at 1900 (7pm), I had a visit with my mother scheduled. The system said that it "cannot load Plugin". This system failure caused me not to be allowed to complete the visit. After some time I tried again to have a visit. This time with my sister. On 24 August 2020 at 1900, again due to the same system failure, I was not allowed to complete the visit.

13. I did not lose my visiting privileges for any reason. Yet, for 7 months I have not been able to see my family, and they have not been able to see me.

14. Currently, there are two ways that an inmate visitor can add money to an inmates commissary account. Either through the internet or by going to the lobby and using the kiosk. When an inmate visitors use the internet, they must pay the additional $7 transaction fee. If inmate visitors wish to forego paying the additional $7 transaction fee, they had the freedom to go to the lobby and use the kiosk. Since the lobby has been closed for the past 7 months, inmate visitors are forced to pay the $7 transaction fee, with no option to add money to the inmate commissary account. The additional $7 transaction fee poses a financial burden upon inmate visitors. With the statewide shelter in place order many businesses have laydoff many of their employees. Many of these employees are inmate visitors. These employees have had to turn to the government to financially survive. Knowing that transaction fees are a

4

financial burden on customers during the Pandemic, Many businesses forego these burdensome transaction fees until the Pandemic ceases.

15. Inmate visitors are forced to consent to have their facial recognition data given up so they can visit their inmate. Inmate visitors do not know if this data is submitted to the government. This is a privacy concern for the inmate visitor. Many of these inmate visitors have never been incarcerated. Forced consent is not consent. If inmate visitors do not submit, they cannot visit their inmate. Inmate visitors do not know if SmartJailMail is collecting this information or not and what the company is doing with the meta data.

16. Many housing unit deputies do not allow inmates to sit and manipulate the visiting stations so they can see whether or not the inmate has a visit scheduled and when. Some housing unit deputies go as far as to turn off the video visiting stations to further discourage use of the video visiting system. As a result, many inmates miss their visits because the housing unit deputy fails to inform the inmates of any upcoming visits. For some housing unit deputies, failure to notify inmates of any scheduled visits is a habitual occurrence for them.

17. Also, because many housing unit deputies do not allow inmates to manipulate visiting stations, inmates cannot take advantage of SmartJail Mail application where the inmate can place a video visit call to anyone in their contact list for a fee.

18. The video visiting system software is running on an unknown video visiting hardware platform. The computer system is incapable of handling the demands of the software. The computer hardware crashes or freezes. While there are four stations available in each housing unit, one or two work, just barely. The other systems fail not allowing for enough inmates to be able to schedule a visit. The hardware may barely be able to handle the software.

19. By mandating that video visits be done through the SmartJail Mail system, this further puts a financial burden on inmate visitors. This forces them to go and buy a compatable laptop, computer, or smartphone. Furthermore, inmate visitors are then forced to buy an internet connection. During this pandemic, many inmate visitors have lost their jobs. Inmate visitors must rely on the government to survive financially. This makes the inmate visitor have to choose between saving to buy a computer, or laptop or save for food or the table or rent.

20. As video visiting booths are in the housing units, privacy is not afforded to inmates and inmate visitors. While it is understood that all visits are being monitored by jail staff, privacy for the inmate so that other inmates cannot be apart of the visit (ie looking at the monitor, and listening to the conversation). Privacy between inmates is not afforded with such a system

21. Upon information and belief, inmates who are housed in Maguire Correctional Facility are allowed to have their visits through the use of

6

the SmartJail Mail tablets. However, inmates must search for enough signal to be able to use the system. As a result, many inmates are not afforded to have privacy when it comes to their visits.

22. Upon information and belief, many inmate visitors are allowed to pay for extra visits. Currently, San Mateo County allows inmates 2 visits a week. For an extra fee, inmate visitors can visit their inmate more. There must be 100% reliability in the system. If the system falters, inmate visitors are at a loss.

23. Upon information and belief, the system itself fails. Server crashes and constant updating makes the system user un-friendly. Unless inmate visitor is adept at using the computer or laptop, they may not know how to make their system useable so they can visit their inmate. SmartJail Mail system is quite user unfriendly as it is hard to navigate and hard to find the necessary plugins so that the system works. This was not the problem when San Mateo County was using Renovo.

24. Plaintiff has offered solutions to these problems. Plaintiff has asked for the re-opening of the lobby and to use another more compatable system like Zoom meeting or Renovo. Just like jail staff, inmate visitors must submit to a Coronavirus test. Upon a negative test result, inmate visitor is then given a lysol wipe to wipe down the station before and after use. Since there is no interaction between inmate and inmate visitor, there is no risk for exposure and because of a negative test there will be no risk for exposure between inmate visitor and inmate visitor.

## V Exhaustion of Legal Remedies

25. Plaintiff Kevin B Prasad used the prisoner grievance procedure available at Maple Street Correctional Center to try and solve the problem. On 28 July 2020 Plaintiff Kevin B Prasad presented the facts relating to this complaint. On 1st August 2020 Plaintiff Kevin B Prasad was sent a response saying that the grievance had been denied. On 3rd August 2020 he appealed the denial of the grievance with no response to date.

## VI Legal Claims.

26. Plaintiff reallege and incorporate by reference paragraphs 1-25.

27. The continued use of the Smart Jail Mail system violated plaintiff Kevin B Prasad's rights and constituted Cruel and Unusual Punishment under the Eighth Amendment to the United States Constitution.

28. The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described wherein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the declaratory and injunctive relief which plaintiff seeks.

8

## VII. Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that this court enter judgement granting plaintiff:

29. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

30. A preliminary and permanent injunction ordering defendants Sheriff Carlos G Bolanos, Undersheriff Mark C Robbins, Assistant Sheriff John W Munsey, Captain Kristina Bell, and Lieutenant John Kavach to open the lobby for inmate visitors, and to stop using SmartJail Mail system for visits.

31. A jury trial on all issues triable by jury.

32. Plaintiff's cost in this suit

33. Any additional relief this court deems just, proper, and equitable.

Dated: 11 Nov 2020

Respectfully Submitted
Kevin B Prasad #L222492
1300 Maple St
Redwood City, CA 94063

9

## Verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct

Executed at Redwood City California on

*/s/ Kevin B Prasad*

Kevin B Prasad
#1222492
1300 Maple St
Redwood City, CA 94063

10